IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:05CR162 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| HILARIO FELIX, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the amended motion to suppress filed by defendant Hilario Felix (Felix) (Filing No. 177). Felix is charged in the single count of the Superseding Indictment with a conspiracy to distribute and possess with intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. § 846. Also charged in the same count of the Superseding Indictment are: Ruben Lopez Cazares (Cazares), Genaro Favala Ramirez, Eladeo Favala Ramirez, and Manuel Garcia (Garcia). Eladeo Favala Ramirez and Garcia have entered pleas of guilty and are awaiting sentence. Genaro Favala Ramirez has filed a motion to dismiss and is awaiting a hearing on the motion following appointment of new counsel. Cazares is awaiting trial.

Felix seeks to suppress all evidence obtained during and derived from the interception of wire communications from telephone number (402) 841-4374. An evidentiary hearing was held on Felix's motion on July 14, 2006. During the hearing, the court heard the testimony of Special Agent Drew M. Armstrong (Agent Armstrong) of the Federal Bureau of Investigation (FBI). The court also received into evidence the following exhibits:

        Exhibit 1 -    Second Amended Application for Interception of Wire Communications - Misc. No. 04-69;
        Exhibit 1A -    Second Amended Order Authorizing Interception of Wire Communications - Misc. No. 04-69;
        Exhibit 1B -    Second Amended Order to Service Provider - Misc. No. 04-69;
        Exhibit 2 -    Initial Interim Report - Misc. No. 04-69;
        Exhibit 3 -    Application for Continued Interception of Wire Communications - Misc. No. 04-69;

Exhibit 3A -   Order Authorizing the Continued Interception of Wire Communications - Misc. No. 04-69;
Exhibit 3B -   Order Authorizing the Continued Interception of Wire Communications to Service Provider - Misc. No. 04-69;
Exhibit 4 -    Second Interim Report - Misc. No. 04-69;
Exhibit 5 -    Application for Continued Interception of Wire Communications - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 5A -   Order for Continued Interception of Wire Communications - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 5B -   Order Authorizing the Continued Interception of Wire Communications to Service Providers - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 6 -    Third Interim Report - Misc. No. 04-69;
Exhibit 7 -    Interim Report (November 12, 2004-November 25, 2004) - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 8 -    Application for Continued Interception of Wire Communications - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 8A -   Order for Continued Interception of Wire Communications - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 8B -   Order Authorizing the Continued Interception of Wire Communications to Service Providers - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 9 -    Interim Report (November 25, 2004-December 9, 2004) - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 10 -   Interim Report (December 9, 2004-December 23, 2004) - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 11 -   Interim Report (December 22, 2004-January 6, 2005) - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 12 -   Application for Continued Interception of Wire Communications - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 12A -  Order for Continued Interception of Wire Communications - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 12B -  Order Authorizing the Continued Interception of Wire Communications to Service Providers - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 13 -   Interim Report (January 6, 2005-January 21, 2005) - Misc. No. 04-69 and Misc. No. 04-75;

      Exhibit 14 -   Order for Sealing of Records and Postponement of Notification - Misc. No. 04-69 and Misc. No. 04-75;
Exhibit 15 -   Chain of Custody Form;
Exhibit 16 -   Minimization Instructions;
Exhibit 16A - Acknowledgment of Interception Instruction.

Since the exhibits dealt with a wire interception order, all exhibits were sealed in accordance with NECrimR 41.2. A transcript of the hearing (TR.) was filed on July 26, 2006 (Filing No. 199).

## FINDINGS OF FACT

Agent Armstrong testified he was the affiant for the wiretap applications and was involved in the investigation from its inception (TR. 6). As such, he assisted in the interceptions and was familiar with the minimization instructions which were used in the interceptions and the minimization efforts made in this matter (TR. 6). A Spanish language translator was available in the room at the time the phone calls were intercepted (TR. 6-7). The minimization instructions allowed for two minutes of interception to permit the monitor to identify the voice and person talking and to determine whether the call was criminal or not (TR. 7). The monitors were also faced with various code words used during the interception to include terms for cars which were used as code words for drugs (TR. 8). Since several of the interceptees were involved with business involving cars, i.e., a used car lot and a car repair business, the monitors had to place the intercepted conversation in context to determine whether to continue monitoring (TR. 8). The two minute minimization was used throughout the period of the wiretap (TR. 6-7). Monitors listened to some calls for more than two minutes because of the content, and minimized other calls in less than two minutes (TR. 21).

The extent and nature of the wiretap are set forth in Exhibits 1 through 16A as set forth above.

A Second Amended Application for the Interception of Wire Communications was presented to U.S. District Court Chief Judge Richard G. Kopf on September 28, 2004 (Exhibit 1). Therein, the United States Attorney's office set forth the written authority of the designee of the Attorney General under 18 U.S.C. § 2516 for the application. The

application included the affidavit of Agent Armstrong setting forth the probable cause for the interception. The affidavit set forth the target telephone number, a list of sixteen persons expected to be intercepted over the target telephone number, and ten pages of details regarding the investigation of a methamphetamine trafficking organization in the Norfolk area of Nebraska. The details listed information from surveillance, confidential source information, corroboration of such information, undercover agent operations, arrest information, and polygraph examinations. The affidavit set out eight pages of pen register information linking various individuals to the target telephone number. The affidavit set forth the necessity for the wiretap to uncover unknown members of the organization, the limited success of physical surveillance blunted by the organization's efforts at counter-surveillance, the ineffectiveness of grand jury subpoenas to gather evidence, the failure of the use of confidential sources to identify sources of the methamphetamine (especially those from out of state), the limited ability to use undercover agents, the limited availability of search warrants and pen register information, the limited information available from interviews of arrested subjects, and the limited ability to utilize trash pickups to uncover evidence. The affidavit set forth in Section VI the minimization efforts proposed during the duration of the wire interception.

After review of the application and affidavit, Chief Judge Kopf found probable cause that the target telephone number was being used to conduct a drug trafficking activity and authorized the interceptions over the target telephone number for a period of thirty days (Exhibit 1A). Chief Judge Kopf also required periodic reports from the government. Interception began on September 29, 2004 at 5:39 p.m. Interim reports were made as directed detailing the interceptions made to date and the necessity for continued interception (e.g., Exhibit 2). These reports were received and reviewed by Chief Judge Kopf.

The government sought and obtained thirty-day extensions of the wiretap on October 27, 2004 (Exhibit 3), November 12, 2004 (Exhibit 5), December 10, 2004 (Exhibit 8), and January 7, 2005 (Exhibit 12). Each of the applications contained the authorization of the Attorney General's designee pursuant to 18 U.S.C. § 2516, and an affidavit containing a renewed statement of probable cause and need for the continuation of the wire

interception. Chief Judge Kopf authorized the continued interception in separate orders (Exhibits 3A, 5A, 8A, and 12A). Throughout the intercept, the government provided Interim Reports to Chief Judge Kopf keeping Chief Judge Kopf abreast of the interceptions made to date and the necessity for continued interceptions (Exhibits 2, 4, 6, 7, 9, 10, 11, and 13). The wire interception ended on February 6, 2005. Chief Judge Kopf ordered the recordings of the wire interceptions sealed on February 7, 2005 (Exhibit 14). The recordings were sealed on February 7, 2005 (Exhibit 15).

Exhibit 16 is a copy of the minimization instructions followed by the monitors of the wiretap during the period of interception. Exhibit 16A is a signature log of the monitors of the wire intercept acknowledging their responsibilities under the minimization instructions and the requirements of the wire intercept orders of Chief Judge Kopf.

## LEGAL ANALYSIS

Felix argues the applications for interception and amendments fail to set forth sufficient probable cause to warrant the issuance of the interception orders. Felix also argues the application for interception, the amendments thereto, and the application for an extension fail to demonstrate a necessity for the interception order. Felix alleges the government failed to comply with the minimization requirements of 18 U.S.C. § 2518. Finally, Felix argues the wiretap recordings were not sealed immediately as required by statute. Felix argues each of the above alleged violations require the suppression of the evidence obtained through the interception orders.

### 1. Probable Cause

The statutory scheme authorizing wiretaps for law enforcement purposes requires the inclusion of four elements in the probable cause statement:

(1) the offense being investigated;
(2) the facilities or place from which interception is to occur;
(3) the type of communications to be intercepted; and
(4) the identity of persons to be overheard.

**See** 18 U.S.C. § 2518(1)(b).  Each of the elements must be shown by proof sufficient to support a judicial finding of probable cause that the facts asserted exist.  If insufficient facts are offered to establish probable cause about any one of the four elements, the order may not be issued.  James G. Carr, ***The Law of Electronic Surveillance***, § 4:22 (2d ed. 2006).  The standard for probable cause for a wiretap is no stricter than the standard for probable cause for the issuance of a search warrant.  ***United States v. Milton***, 153 F.3d 891, 894 (8th Cir. 1998).  Like affidavits for conventional search warrants, applications for electronic searches will be read "in a practical and commonsense fashion."  ***United States v. Falls***, 34 F.3d 674, 680-81 (8th Cir. 1994).  As the Supreme Court stated in ***Illinois v. Gates***, 462 U.S. 213 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

***Gates***, 462 U.S. at 238.

Further, "[a] warrant affidavit [need not contain] an averment of previous reliability, the appropriate inquiry always being whether the informant's *present information* is truthful and reliable."  ***United States v. Scalia***, 993 F.2d 984, 987 (1st Cir. 1993) (**citing *United States v. Cochrane***, 896 F.2d 635, 641 (1st Cir. 1990)).  In making such a determination, the affidavit must be read as a whole, with each fact gaining color from the others.  ***United States v. Townsley***, 843 F.2d 1070, 1076 (8th Cir. 1988), **modified on other grounds,** 856 F.2d 1189 (8th Cir. 1988) (noting the court should not engage in punctilious, paragraph-by-paragraph review of affidavits, but should look for a substantial basis for the magistrate's decision).

The court finds the Application and Affidavit establishes there is probable cause to believe that a methamphetamine trafficking organization was operating in the Norfolk, Nebraska, area, and the described telephone was being used to conduct that business.  Various pieces of information gathered over a period of time mesh with one another to arrive at that conclusion.  The information gathered from pen registers, seized drug

records, interviews with arrestees, informants, and surveillance, amounts to a convincing account of an ongoing drug enterprise using the telephones in question.

Further, the applications and affidavits for the extensions of the wiretap were sufficiently detailed to warrant Judge Kopf's issuing the extension orders.

Even assuming, *arguendo,* that probable cause was lacking in sufficiency, the **Leon** good faith exception would allow the admissibility of the intercepted communications. Under ***United States v. Leon***, 468 U.S. 897 (1984), evidence gathered pursuant to a warrant which later is found not to have been based on probable cause need not be suppressed if the officers enforcing the warrant relied in good faith on its validity. 18 U.S.C. § 2518(10)(c) provides: "The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications." As stated by the Eighth Circuit in ***United States v. Moore***, 41 F.3d 370, 376 (8th Cir. 1994).

> **Leon** of course dealt with the judicially developed exclusionary rule for Fourth Amendment violations, whereas we deal here with a statutory exclusionary rule imposed for a "violation of this chapter." However, § 2518(10)(a) is worded to make the suppression decision discretionary ("If the motion is granted"), and its legislative history expresses a clear intent to adopt suppression principles developed in Fourth Amendment cases. **See** S.Rep. No. 1097, 1968-2 U.S.C.C.A.N. at 2185. Therefore, we conclude that the subsequently-developed **Leon** principle applies to § 2518(10)(a) suppression issues.

*Id.* at 376.

In **Leon**, the Supreme Court held that "evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant 'with an objectively reasonable reliance on the magistrate's determination of probable cause.'" ***United States v. LaMorie***, 100 F.3d 547, 555 (8th Cir. 1996) (**quoting *United States v. Riedesel***, 987 F.2d 1383, 1391 (8th Cir. 1993)). There are four exceptions to this good faith rule:

> (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
> (2) where the issuing officer "wholly abandoned his judicial

>role;" (3) where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid.

*LaMorie*, 100 F.3d at 555 (citations omitted). None of those exceptions apply in this instance. The court finds the interception orders were not so deficient that an objective and reasonable law enforcement officer could not rely on the interception orders issued by a neutral and detached judge.

Accordingly, Felix's challenge to the sufficiency of the application and affidavit for the wiretap order and the extensions thereof must fail and do not serve a basis to suppress the evidence obtained pursuant to the wiretap.

### 2. Necessity

18 U.S.C. § 2518(1)(c) requires that normal investigative procedures be utilized before employing electronic surveillance. While electronic surveillance is not to be the initial step in the investigation, there is no requirement that law enforcement exhaust all other available investigative procedures. *United States v. Barens*, 47 F.3d 963, 965 (8th Cir. 1995); *United States v. Macklin*, 902 F.2d 1320, 1326-27 (8th Cir. 1990). "Whether the statutory requirement is met is to be determined by the issuing judge in a common sense manner, and the determination is a finding of fact, which can be reversed only if clearly erroneous." *Macklin*, 902 F.2d at 1327 (**citing** *United States v. Davis*, 882 F.2d 1334, 1343 (8th Cir. 1989); *United States v. Garcia*, 785 F.2d 214, 223 (8th Cir. 1986)) (also holding that the § 2518(1)(c) necessity requirement was satisfied when normal investigative procedures failed to reveal scope of conspiracy and all persons involved). "Accordingly, the affidavit need not explain away all possible alternative techniques because investigators are not required to use wiretaps or eavesdropping devices only as a last resort." *Garcia*, 785 F.2d at 223 (**citing** *United States v. Matya*, 541 F.2d 741, 745 (8th Cir. 1976)).

While Felix points out that some of the investigative techniques provided the officers with useful information, such as the information from confidential informants, which could

8

be characterized as successful, a wiretap may still be authorized.  **See** *O'Connell*, 841 F.2d at 1415.  In this case, officers had not been able to determine from other investigative methods the scope of the suspected conspiracy or to develop enough evidence to successfully prosecute the suspects whom they had identified.  **See** *Macklin*, 902 F.2d at 1327.  There were sufficient facts set forth in the Application and Affidavit for the original interception order and the extensions that normal investigative procedures had been tried and failed and other techniques appeared unlikely to succeed if tried or were too dangerous.  **See** 18 U.S.C. § 2518(3)(c); ***United States v. Barnes***, 47 F.3d 963, 965 (8th Cir. 1995).

The challenges to the wiretap orders on the basis that a wire intercept was unnecessary and there was a failure to demonstrate that other investigative means were tried and failed are without merit and should not serve as a basis to suppress the evidence obtained from the wiretap.

### 3.  Failure to Minimize

In a previous report and recommendation in this district, Magistrate Judge Jaudzemis succinctly set forth the requirements of minimization:

> The requirement that law enforcement minimize its intrusion into the private conversations taking place on the intercepted telephone number is mandated both by the statutory scheme itself, 18 U.S.C. § 2518(5) and the order authorizing the specific wiretaps at issue.  However, no statutory guidelines nor criteria for assessing whether law enforcement's attempts to minimize are sufficient are expressed anywhere in the statutory scheme.  As a result, case law has explored the parameters which the court is to evaluate in determining whether minimization has been accomplished.  In ***Scott v. United States***, 436 U.S. 128, 136 (1978), the Court held that the determination of whether minimization has been accomplished depends upon "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time."  Therefore, when a reviewing court is considering whether minimization had been accomplished, that is, whether the interception of non-pertinent calls had been adequately avoided, the court would view the matter from the perspective of the officer at the

time he/she was monitoring the wiretap to determine objectively whether minimization occurred.

Among the factors considered in evaluating whether minimization efforts were reasonable and successful are the following:

> (1) The nature of the offense being investigated and the purposes of the investigation and surveillance;
> (2) The type and location of the device (telephone or a bug) and the type of speakers in conversations to be expected at that location;
> (3) The suspects' apparent awareness of the possibility of surveillance and their use of counter-measures;
> (4) The officers' implementation of generally accepted and preferred minimization techniques; and
> (5) the degree of judicial supervision.

***United States v. Garcia***, 785 F.2d 214, 224 (8th Cir.), **cert. denied**, 475 U.S. 1143 (1986).

While there is no specific requirement that minimization be accomplished by a specific procedure, there are generally accepted techniques. "Courts have approved a number of procedures which can and should be used to achieve minimization. Among these are pre-search guidelines, special instructions, mid-search supervision, and monitoring procedures intended to reduce the interception of unrelated calls while enabling the surveillance to fulfill its purposes." James G. Carr, ***The Law of Electronic Surveillance*** § 5.7(c) at 5-32 (2d ed. 1993).

The time that a particular call is intercepted relative to the length the wiretap has been in operation can also be relevant to the duty to minimize.

> "At the outset of the surveillance, officers generally will be permitted to conduct lengthy interception of all, or nearly all, calls. Thus, at that time, and even throughout the period of interception, all conversations can be overheard for a brief period to identify the speakers and ascertain pertinence. Most courts have upheld interception for these purposes if it or the conversation terminated in less than two minutes. The mechanics of logging the call, determining speaker identity, and assessing

> pertinence have generally been held to require full interception up to two minutes."
>
> James M. Carr, *Electronic Surveillance*, § 5.7(c) at p. 5-36-37. **Accord**, *United States v. Hinton*, 543 F.2d 1002, 1012 (2d Cir.), **cert. denied**, 429 U.S. 980 (1976).
>
> As a general rule, courts have been more tolerant of extensive surveillance in conspiracy cases, particularly narcotics conspiracies. *United States v. O'Connell*, 841 F.2d 1408, 1417 (8th Cir.), **cert. denied**, 487 U.S. 1210 (1988), 488 U.S. 1011 (1989). Similarly, less effort to minimize is necessary with regard to conversations between known co-conspirators. *United States v. Torres*, 908 F.2d 1417, 1424 (9th Cir.), **cert. denied**, 498 U.S. 905, 498 U.S. 948 (1990).

*United States v. Belitz*, 8:CR94-00095 (D. Neb.) (Report & Recommendation by Magistrate Judge Jaudzemis, Filing No. 442, June 29, 1995).

Felix makes a general attack on the lack of minimization. The government has established a minimization protocol which was approved by Chief Judge Kopf. Furthermore, the protocol was reasonable under the circumstances of the drug trafficking organization under investigation. Exhibits 15 and 16 and Agent Armstrong's testimony establish that minimization occurred and such minimization met all the standards of 18 U.S.C. § 2518)5). The evidence reflects the protocols were followed. *See United States v. Padilla-Pena*, 129 F.3d 457, 462-63 (8th Cir. 1997). Adequate minimization occurred in this matter. There is no factual basis to support the motion to suppress on the basis that law enforcement failed to minimize intercepted conversations.

### 4. Failure to Seal Recordings

Felix asserts the intercepted communications should be suppressed because the interceptions were not sealed in accordance with statute. Title 18 U.S.C. § 2518(8)(a) provides, in part: "Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." There is no question that immediately after the interception terminated on February 6, 2005, the interception tapes were presented to Chief Judge Kopf and were ordered sealed (Exhibit 14). The tapes were then sealed with the clerk (Exhibit

15).  As such, there appears to be strict compliance with the sealing requirements of the federal statute.  Accordingly, Felix's position is without merit.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Felix's amended motion to suppress (Filing No. 177) be denied.

### ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 12th day of September, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge